# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Clear Channel Outdoor, Inc., a Delaware corporation, | Civil No. 06-3304 (DWF/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| The City of Saint Paul, | |
| Defendant. | |

_____

David K. Nightingale, Esq., and Marvin A. Liszt, Esq., Bernick & Lifson, P.A., counsel for Plaintiff.

Lawrence J. Hayes, Jr., Assistant City Attorney, Office of the City Attorney, counsel for Defendant.

_____

## INTRODUCTION

Clear Channel Outdoor, Inc. ("Clear Channel") commenced this action against the City of Saint Paul (the "City") after the City passed a zoning ordinance that banned all extensions on billboards in St. Paul. This matter came before the Court on May 8, 2009, pursuant to Clear Channel's motion for partial summary judgment and the City's motion for summary judgment. For the reasons set forth below, the Court grants Clear Channel's motion and denies the City's motion.

**BACKGROUND**

The City is a home rule charter municipality located in Ramsey County, Minnesota. Clear Channel is a Delaware corporation with its principal place of business in Arizona. Clear Channel owns and operates two types of billboards in St. Paul—poster panels, which are 12 x 25 feet and use paper, and bulletins, which are 14 x 48 feet and use vinyl. Since 1925, Clear Channel and its predecessors have commonly used extensions on their bulletin billboards. Extensions are graphics or words that extend above or from the sides of the rectangular face of a billboard. Extensions are limited to no more than six feet high and no more than eighteen inches on either side and below the signs. Currently, Clear Channel owns and operates 77 bulletin billboards in St. Paul containing 124 faces.

In November 2000, the City adopted a total prohibition on new advertising signs, including billboards, and it enacted other certain restrictions concerning the size and timeframe of use for billboard extensions. Prior to that time, billboards with and without extensions, although subject to regulation, were conforming uses within St. Paul. Since November 2000, existing billboards have been deemed legal nonconforming uses. *See generally*, St. Paul Legislative Code (hereinafter, "Code")*,* §§ 66.214 (2001), 66.301 (2001); § 62.102 (2007).

On March 8, 2006, the City amended Code (a) and (g) of § 64.301, entitled "Nonconforming Signs," to ban the use of all extensions on billboards in St. Paul. Specifically, the amendment provides, "No sign shall be enlarged or altered in a way which increases its nonconformity. Billboard extensions are not permitted."

Code, § 64.301(a). The City contends that this amendment brings billboards more in line with all other signs in St. Paul by requiring all signs to comply with certain size limitations. In June 2006, the City's Office of Licensing, Inspections, and Environmental Protection demanded that Clear Channel remove all existing billboard extensions and that no new extensions be used.

Shortly thereafter, Clear Channel filed a two-count Complaint in this Court, alleging that (1) the City engaged in the unconstitutional and unreasonable use of police power in violation of Minn. Stat. § 462.357 and that (2) the City's actions violated Clear Channel's due process and equal protection rights under the United States and Minnesota Constitutions. Clear Channel then moved for partial summary judgment to determine whether Code § 64.301(a) is valid and enforceable. The City also moved for summary judgment, asserting that Clear Channel's two claims fail as a matter of law. The Court originally heard the parties' motions on October 26, 2007, at which time the Court ordered the parties into settlement negotiations. After the parties informed the Court in January 2009 that they had reached a settlement impasse, the Court ordered the parties to submit supplemental summary judgment briefs and to appear for a second motion hearing on May 8, 2009.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Clear Channel's Motion for Partial Summary Judgment

Clear Channel argues that the City's amendment to Code § 64.301(a) is invalid because it is unreasonable, arbitrary, and capricious.[1] Regardless of whether zoning matters are legislative (rezoning) or quasi-judicial (variances and special use permits), the standard for review is the same for all zoning matters and is essentially whether the zoning authority's actions were reasonable or there was a rational basis for the actions. *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 416-17 (Minn. 1981) (explaining that cases have expressed this standard differently, such as "is there a reasonable basis for the decision," "is the decision unreasonable, arbitrary or capricious," or "is the decision reasonably debatable.")

Cities are authorized to enact zoning ordinances "for the purpose of promoting the public health, safety, morals and general welfare." Minn. Stat. § 452.357, subd. 1. Thus, because a municipal body is formulating public policy in legislative zoning, the reasonableness or rational basis inquiry for zoning matters focuses on whether the proposed ordinance promotes the public health, safety, morals, and general welfare. *Honn,* 313 N.W.2d at 417. Specifically, a city must have articulated reasons reasonably related to public health, safety, morals, and welfare recorded or reduced to writing for a zoning ordinance to be valid. *Id.* at 416. If a city council fails to record the basis for a

---

[1] As the parties acknowledged at the May 8, 2009 motion hearing, their arguments have evolved from the filing of the original summary judgment motion through failed settlement negotiations until now, with the focus now primarily on how Code § 64.301(a)
(Footnote Continued on Next Page)

zoning determination at the time it acts, the zoning action is presumed arbitrary and therefore invalid. *R.A. Putnam & Assoc., Inc. v. City of Mendota Heights*, 510 N.W.2d 264, 267 (Minn. Ct. App. 1994). However, "a city council has broad discretion in legislative matters, and even if the city council's decision is debatable, so long as there is a rational basis, the courts do not interfere." *Honn*, 313 N.W.2d at 415. The application and construction of a statute, charter, ordinance, or resolution is a question of law. *Lilly v. City of Minneapolis*, 527 N.W.2d 107, 110 (Minn. Ct. App. 1995) (citing *Hibbing Educ. Ass'n v. Pub. Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985)).

Clear Channel contends that the City's ban on billboard extensions lacks any contemporaneous discussion or findings in the record that showing the City Council's action had a reasonable relationship to public health, safety, or welfare. Rather, Clear Channel asserts that the City Council decision was based only on its "whim to eradicate the rights of billboard owners." (Clear Channel's Supplemental Mem. at 3.) As a result, Clear Channel argues that Code § 64.301(a) is unenforceable as a matter of law because it is arbitrary and capricious.

In response, the City argues that the City Council's actions in adopting the extension ban were not arbitrary and capricious because permitting extensions on billboards was contrary to the public's health, safety, and welfare. Specifically, the City contends that "it is not debatable that heightened distractions are traffic hazards for

---

(Footnote Continued From Previous Page)
was enacted.

drivers, passengers, and pedestrians."[2] (City's Reply Mem. at 11.) In its supplemental memorandum, the City also points to the "Purpose" section of the Code to demonstrate that the purpose of the ordinance, among other things, is to promote public health and safety, reduce hazards to the public, and reduce the number of nonconforming signs in St. Paul. *See* Code § 64.101. Finally, the City notes that there were three public readings of the ordinance and that Clear Channel's counsel appeared at one of the public hearings.[3]

The Court begins its analysis with a review of the timeline associated with the City Council's adoption of Code § 64.301. (*See generally* 9/11/07 Affidavit of Eric D. Larson ("Larson Aff."), Exs. D-G; 10/05/07 Affidavit of David K. Nightingale ("Nightingale Aff."), Exs. 1-16.) In early 2005, the City began redrafting its sign ordinances. The City's staff drafted proposed ordinance changes for the Planning Commission's Zoning Committee hearing to be held on March 3, 2005. The staff's report explained that complaints had been received about billboard extensions staying up longer than the time allowed and that district councils had requested the establishment of a program to monitor

---

[2]   The City then asks for leave to provide the Court "with the complete record, which involves voluminous materials, supporting sign ordinances, including section 64.301, as amended." (*Id.*)

[3]   The City also cites to two recent cases, *Naser Jewelers, Inc. v. City of Concord*, 513 F.3d 27 (1st Cir. 2008) and *Carlson's Chrysler v. City of Concord*, 938 A.2d 69 (N.H. 2007), to support its argument that courts have recognized as a matter of law that ordinances that eliminate billboards are reasonably related to highway safety. The Court does not find the holdings of those cases to be persuasive because those cases are not primarily concerned with the issues involved in this case.

7

billboard extensions for code compliance. The staff report stated that monitoring would be possible, if a permit of approximately $48 was required for all billboard extensions. The City staff then recommended that Code § 64.301(g) be amended to require permits for temporary extensions. At the March 3, 2005 hearing, however, John Mannillo of Scenic Saint Paul,[4] suggested that instead of charging a permit fee, billboard extensions should be eliminated. The Commission laid the matter over until March 17, 2005. On that date, the City staff wrote a memorandum to the Zoning Committee explaining that extensions are currently permitted under the sign ordinance and that if there is a desire to eliminate extensions, a separate study should be initiated to study such an idea. On March 25, 2005, the St. Paul Planning Commission passed Resolution 05-35, which included the amendment requiring permits for billboard extensions, for consideration by the City Council.

On August 3, 2005, the City Council held a public hearing, at which permits for billboard extensions were discussed. Councilmember Benanav asked whether extensions could be eliminated, and a member of the City Attorney's office deferred the question to another attorney for the City. As a result, the matter was laid over to the August 10, 2005 meeting, at which time it was again laid over until November 2, 2005.

---

[4] Scenic Saint Paul is a group of citizens whose mission is dedicated to developing an attractive and prosperous city by controlling billboards and other intrusive advertising. *See* http://scenicsaintpaul.org.

On August 17, 2005, the City Council approved Resolution 05-767 under suspension of the rules, which asked the Planning Commission to study additional proposals for sign ordinances and to report back to the City Council by November 2, 2005. No mention was made of further revision to the proposed ordinance concerning permit fees for billboard extensions, but Resolution 05-767 did include a provision prohibiting billboard extensions.

On September 21, 2005, the City Council approved Resolution 05-882 under suspension of the rules, requesting that the Planning Commission consider specific language changes in sign regulations. A second public hearing was then held before the Zoning Committee on September 29, 2005, at which time Commissioner Faricy moved to prohibit all billboard extensions and to place that language in Code § 64.420. In response, Commissioner Alton stated that he would oppose such a motion because there was a lack of testimony in opposition to billboard extensions, the original proposal was adequate, and concerns about potential lawsuits that might arise if all billboard extensions were eliminated. Commissioner Faricy's motion was then denied, and Commissioner Alton moved that there be no change to the original recommendation concerning billboard extension permits. The Zoning Committee passed that motion by a vote of five to two.

On October 21, 2005, the Planning Commission passed Resolution 05-91, noting that the original proposal was adequate, no testimony was received in opposition to extensions, and there was a concern regarding potential lawsuits. Specifically, the

9

Planning Commission recommended that billboard extensions be permitted to continue with the addition of a permit.

On November 2, 2005, the City Council considered the matter of billboard extensions under Ordinance 05-632. Because there was no discussion, however, regarding billboard extensions, the City Council determined that another public hearing would have to be held because the Planning Commission had made significant changes to its proposal. As a result, the matter was laid over until November 9, 2005. The City Council then laid over Ordinance 05-632 at its November 9, 2005, November 16, 2005, December 7, 2005, January 4, 2006, and January 18, 2006 meetings. There was no discussion of billboard extensions at any of those meetings. At its February 15, 2006, meeting, the City Council introduced a new ordinance, Ordinance 06-160 in place of Ordinance 05-632. Ordinance 06-160, which prohibited billboard extensions, was on for the First Reading at the February 15, 2006 meeting; on for the Second Reading at the February 22, 2006 meeting; and for the Third Reading at the March 1, 2006 meeting. The minutes from February 15 and 22, 2006 meetings do not mention any discussions concerning billboard extensions.

At the March 1, 2006 meeting, the City Council heard the Third Reading of Ordinance 06-160. Jerry Henrickson, Assistant City Attorney, explained the history of the prohibition of billboards and the grandfathering in of certain billboards. Wendy Lane, the Zoning Administrator from the Office of Licensing, Inspection, and Environmental Protection, described what a billboard extension was and noted that the Zoning

Committee recommended an ordinance requiring permits only for billboard extensions and that the Planning Committee voted to support the Zoning Committee's recommendation. One of Clear Channel's lawyers, Marvin Liszt, presented argument against the proposed ordinance, stating that non-conforming uses of billboards with extensions are allowed to continue under the state statutes and that any ordinance to prohibit them would be illegal. The minutes do not reflect any discussion by the City Council or testimony received in support of a billboard extension prohibition, although it was noted that Jeanne Wignum, a St. Paul resident, and John Manillo, of Scenic Saint Paul and the Downtown Building Owners' Association, appeared in support of the ordinance. The matter was then laid over to March 8, 2006 for final adoption. On March 8, 2006, the City Council adopted Ordinance 06-160. The minutes from that meeting state:

> 34. Final Adoption – 06-160 – An ordinance amending § 64.301(a) of the Saint Paul Legislative Code pertaining to the regulation of nonconforming signs by prohibiting "billboard" extensions to nonconforming signs and old regulations pertaining to such extensions under Legislative Code 301 (g).
>
> Councilmember Helgen requested that staff look at the concentration of billboards and the impact they will have in the future. Councilmember Benanav stated there is research material available in the Ward 4 office which he would be happy to share.
>
> Councilmember Harries said he wants to see good policy directive set for this issue that will uphold legally if it is challenged. He requested that the City Attorney keep the Council informed on developments on this issue.
>
> Councilmember Benanav moved for approval.
>
> Adopted  Yeas – 6  Nays – 0

(Larson Aff., Ex. 6. at 5-6.) The Mayor of St. Paul signed the ordinance on March 14, 2006. It was published on April 3, 2006, and it went into effect on May 3, 2006.

Recognizing that a City Council has broad discretion in legislative matters, the Court has carefully reviewed the history associated with the ordinance at issue in the light most favorable to the City. In doing so, the Court concludes that the City's argument that there was a rational basis for the passing of Ordinance 06-160 is not supported by the record. Specifically, after questions were raised about the legality of a total prohibition on billboard extensions, the City Council made no contemporaneous findings, did not articulate any reasons for the enactment of the ordinance, and did not receive any testimony in support of the prohibition. In sum, there was simply no discussion on the need for a total prohibition on billboard extensions. Moreover, the only reference to a study on the issue is from Councilmember Benanav, but he does not provide the study or summarize its contents. Finally, the City's argument concerning heightened distractions as traffic hazards is belied by the fact that both the Planning Commission and Zoning Committee supported a permitting ordinance, as opposed to a prohibition ordinance. Based on the foregoing, the Court concludes that Code § 64.301(a) is unenforceable as a matter of law because the record is void of any articulated reasons by the City for its enactment of the ordinance.

Clear Channel also advances several other arguments to support its partial

summary judgment motion, including that Code § 64.301, as amended, (1) violates the Minnesota's ban on amortization, Minn. Stat. § 462.357, subd. 1c; (2) is contrary to Minnesota's statutory protections afforded to nonconforming uses, Minn. Stat. § 462.357, subd. 1e; and (3) constitutes a regulatory taking and a taking under the Minnesota Outdoor Advertising Control Act, Minn. Stat. ch. 173. As Clear Channel conceded in its reply memorandum and at oral argument, however, the Court need not reach Clear Channel's other arguments if the Court determines that the City's enactment of Code § 64.301(a) was arbitrary and capricious. For this same reason, the Court also need not reach the City's motion for summary judgment.

## CONCLUSION

This case adds another entry to the parties' already lengthy and litigious history concerning billboards. The Court hopes that its decision today will prevent some future disputes (and possibly aid in future settlement negotiations) by providing a road map as to how ordinances such as the one at issue in this case could be legally adopted. There is no doubt that the City has the right to regulate billboards. Likewise, there is no doubt that Clear Channel has a very real property interest in its billboards, particularly in billboard extensions that grab the public's attention and generate revenue for Clear Channel. The key to avoiding future legal action may be found if the parties can agree on a way for the City to enact billboard regulations under which Clear Channel receives just compensation for any lost property interests.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Clear Channel's Motion for Partial Summary Judgment (Doc. No. 18) is **GRANTED**.

2. The City's Motion for Summary Judgment (Doc. No. 13) is **DENIED**.

3. St. Paul Legislative Code § 64.301(a) (2007) is **DECLARED UNENFORCEABLE** as a matter of law because the record is void of any articulated reasons by the City for its enactment of the ordinance.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: June 15, 2009         s/Donovan W. Frank
                             DONOVAN W. FRANK
                             Judge of United States District Court